# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CITY OF FISHERS, INDIANA et al.; on behalf of itself and all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>NETFLIX, INC. et al.;<br><br>   Defendants. | CASE NO. 1:20-cv-2351-JMS-MPB<br><br>**CLASS ACTION** |

### PLAINTIFFS' BRIEF IN SUPPORT OF
### MOTION TO REMAND TO STATE COURT

### INTRODUCTION

Just over one year ago, four of the five Defendants in this case attempted to remove a similar state law case brought against them in Missouri state court. The federal district court remanded based on the common law doctrine of comity. *City of Creve Coeur, Mo. v. DIRECTV, LLC*, No. 4:18cv1453, 2019 WL 3604631 (E.D. Mo. Aug. 6, 2019). Defendants now again try the same maneuver. This case should be remanded to state court for the same reasons.

For 150 years, the Supreme Court has repeatedly held that disputes concerning local jurisdictions collecting revenue belong in state court under the comity abstention doctrine. *See, e.g.*, *Dows v. Chicago,* 11 Wall. 108, 110 (1870); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421–24 (2010). "'An examination of [our] decisions,' [the] Court wrote more than a century ago, 'shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [us] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired.'" *Levin*, 560 U.S. at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City,* 213 U.S. 276, 282 (1909)).

Just as the Missouri action will turn on the reach of Missouri's Video Services Provider Act, *City of Creve Coeur*, 2019 WL 3604631, at *5, this action will turn on an interpretation of Indiana's Video Service Franchises Act (the "VSF Act").[1] Pursuant to these state laws, both actions seek to require Defendants to pay a small percentage of their gross receipts to units of local government in which they do business, and each raises a matter of first impression for their respective forum courts. As in Missouri, Plaintiffs here allege that state law requires Defendants to pay these fees, and Defendants will argue it does not. The dispute squarely implicates Indiana's state and local fiscal operations. It should be decided by Indiana's state courts. The local nature of this dispute is an inescapable obstacle to removal.

It is a "basic principle of justice that like cases should be decided alike." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015) (citing *Martin* for same principle). There is no reason to afford Missouri's state courts more deference to address local fiscal matters than Indiana's state courts. In both cases, the defendants have invited "federal-court review of commercial matters over which [the states] enjoy wide regulatory latitude." *City of Creve Coeur*, 2019 WL 3604631, at *5 (quoting *Levin*, 560 U.S. at 431). Plaintiffs respectfully request that this case be remanded to Indiana state court.

## FACTUAL AND PROCEDURAL BACKGROUND

Indiana's VSF Act allows Indiana counties, municipalities, and townships (called "Units" by the VSF Act) to collect a "franchise fee" of up to 5% of video service providers' gross receipts, and it requires those providers to register before providing video service in Indiana. *See* Compl. at ¶¶ 1, 4, 7; I.C. §§ 8-1-34-16, 8-1-34-24. Defendants provide video service to customers in Indiana. *See* Compl. at ¶ 1. But unlike other providers of video service (e.g., cable companies), Defendants have not paid

---

[1] Ind. Code § 8-1-34-1 *et seq*.

franchise fees, depriving Indiana Units of much-needed revenue and giving Defendants an unfair advantage over their direct competitors.

The VSF Act defines "video service" as "(1) the transmission to subscribers of video programming and other programming service: through facilities located at least in part in a public right-of-way; and without regard to the technology used to deliver the video programming or other programming service; and (2) any subscriber interaction required for the selection or use of the video programming or other programming service." I.C. § 8-1-34-14. Plaintiffs allege that Defendants use wireline facilities located at least in part in a public right-of-way to deliver their video services. *See* Compl. at ¶¶ 29-31. Using information found on Defendants' own websites, the Complaint details many ways in which Defendants rely on internet wireline facilities to stream video programming. *Id.* at ¶¶ 25-30.

Plaintiffs are four Indiana Units (Fishers, Indianapolis, Evansville, and Valparaiso). They filed this lawsuit in the Indiana Commercial Court (Marion County) alleging that the VSF Act requires Defendants to pay franchise fees. Plaintiffs seek to represent a class of all Indiana Units in which Defendants provide video service, and seek to require Defendants to abide by the VSF Act and to pay the required franchise fees. *See* Complaint at ¶¶ 8, 15-16. Plaintiffs allege that Indiana's VSF Act applies to Defendants just as it applies to other video service providers. *Id.* at ¶ 31. The central question in the case is the interpretation of this Indiana statute squarely in the realm of local government finance.

Defendant Netflix removed the case to this Court on September 10, 2020. *See* ECF No. 1. Defendants claim that the Court has both diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). *Id.* Notably, this is not the first case in which municipalities have sued Defendants for failure to pay these types of fees. In 2018, City of Creve Coeur, Missouri, filed two cases against the same Defendants (except Disney DTC)—one case against Netflix and Hulu and another against DIRECTV and DISH—in Missouri state court based on Defendants' identical refusal to pay fees to Missouri municipalities under Missouri's version of the VSF Act, § 67.2675, RSMo, *et seq.*, and

3

local ordinances.[2] Defendants removed both cases to federal court in St. Louis, arguing for federal jurisdiction under CAFA. The federal court remanded both cases to Missouri state court under the comity doctrine. *City of Creve Coeur*, 2019 WL 3604631, at *5. Following that decision, Defendants sought leave to appeal to the Eighth Circuit, but the appellate court found nothing worthy of review and denied the petition. *City of Creve Coeur, Missouri v. DirecTV LLC*, No. 19-8016, 2019 WL 7945996, at *1 (8th Cir. Sept. 12, 2019).

## STANDARD OF REVIEW

As the parties invoking federal jurisdiction, Defendants bear the burden of proving that removal was proper. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). Defendants must show by a preponderance of the evidence that all the prerequisites for removal have been met. *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011). "[D]oubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

The Supreme Court has "repeatedly cautioned" that statutes conferring federal jurisdiction "should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" *Levin*, 560 U.S. at 423. This admonition applies with equal force to CAFA, which is "such a jurisdictional statute." *Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017).

## ARGUMENT

With the Supreme Court's caution in mind, even if Defendants have otherwise established the prerequisites of federal court jurisdiction, the comity doctrine controls here. This matter of first impression about the proper interpretation of Indiana state statutes impacting fiscal obligations owed by Defendants to Indiana counties, municipalities, and townships should be decided by Indiana's state courts.

---

[2] Plaintiffs and Defendants in this case are represented by many of the same attorneys as in the Missouri cases.

4

Since at least 1870, the Supreme Court has recognized that cases involving local systems of raising revenue should be decided by state courts. *See Dows v. City of Chicago*, 78 U.S. (11 Wall) 108, 110, (1870) ("It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."). The Supreme Court has consistently reaffirmed the comity doctrine, and lower courts have followed it.

In a 1981 case involving county property taxes, the Supreme Court explained why the doctrine carried such "peculiar force": there is a "delicate balance between the federal authority and state governments," so "concomitant respect … should be accorded state tax laws in federal court." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 108 (1981). The Court noted "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Id.* Accordingly, "the reasons supporting federal noninterference [with state fiscal matters] are just as compelling today as they were in 1937." *Id.* at 112-13 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 527 (1981)).

In 2010, the Supreme Court in *Levin* most recently reaffirmed this foundational principle, stating that the comity "doctrine reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Levin*, 560 U.S. at 421 (internal quotations and citations omitted). Likewise, the Court noted that its prior decisions demonstrate "a proper reluctance to interfere by prevention with the fiscal operations of the state governments," and that courts should "refrain from so doing ***in all cases*** where the Federal rights of the persons could otherwise be preserved unimpaired." *Id.* at 422 (quoting *Boise City*, 213 U.S. at 282) (emphasis added). The Court explained why this policy of federal noninterference is so critical:

5

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Id.* at 422 n.2 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128 n.17 (1971) (Brennan, J., concurring in part and dissenting in part)).

The comity doctrine is so foundational that Congress expressed approval of it by enacting the Tax Injunction Act, which prohibits federal district courts from "enjoin[ing]" or "restrain[ing]" state tax matters so long as state courts offer a "plain, speedy and efficient remedy." 28 U.S.C. § 1341. The comity doctrine, however, is not limited to actions barred by the Tax Injunction Act. As the Seventh Circuit made clear in an en banc decision, "[t]he Supreme Court has told us to withhold decision even in situations to which the [Tax Injunction] Act does not apply" because that Act is just a "partial codification of the federal reluctance to interfere with state" fiscal matters. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 725 (7th Cir. 2011) (en banc); *see also Levin*, 560 U.S. at 424 (confirming that the common law "comity doctrine is more embracive" than the Tax Injunction Act and "was not restricted by its passage").[3]

"Although comity concerns frequently arise in challenges to local *taxes*, they can also apply to challenges to local *fees*." *Homewood Village, LLC v. Unified Gov't of Athens-Clarke County*, No. 3:15-cv-23, 2016 WL 1306554, at *1, 3 (M.D. Ga. Apr. 1, 2016) (remanding case about stormwater fees assessed

---

[3] Courts often analyze remand motions under the broader comity doctrine instead of the Tax Injunction Act. *See Perry v. Coles County, Ill.*, 906 F.3d 583, 586-87 (7th Cir. 2018).

by local ordinance based on the comity doctrine notwithstanding the fact that the fee was not a "tax" under the Tax Injunction Act), *aff'd*, 677 Fed. Appx. 623 (11th Cir. Feb. 7, 2017), *cert. denied*, 138 S. Ct. 88 (2017); *see also Z&R Cab, LLC v. Phil. Parking Auth.*, 616 Fed. Appx. 527, 531 (3d Cir. May 28, 2015) (holding that because *Levin* suggests that "comity applies outside of tax cases," district court must decide whether comity should be invoked to remand case about state taxicab fees to state court). *Homewood Village* correctly observed that the Supreme Court in *Boise City*, 213 U.S. at 287, already rejected the argument that comity concerns arise only in the context of challenges to taxes instead of fees by remanding a case about a license *fee*. 2016 WL 1306554, at *3. "The key issue is not whether the ordinance imposes a tax or a fee. The relevant questions are (1) would the relief sought unduly disrupt the local government's fiscal affairs and (2) does a state remedy exist to challenge the fee." *Id.* As in *Homewood Village*, the answer to both questions in this case is yes.[4]

The Supreme Court in *Levin* identified several relevant factors leading it to remand that case to state court under the comity doctrine. *Levin*, 560 U.S. at 431-32. All of these *Levin* factors suggest that a remand order should issue here also. First, by removing this case, Defendants have invited federal review over a "commercial matter" over which the Indiana legislature and Indiana Units have traditionally enjoyed wide regulatory latitude via state statutes (such as the VSF Act) and related ordinances.

---

[4] Numerous cases have also held that gross receipts fees such as those at issue here are actually considered taxes, not fees, for purposes of the Tax Injunction Act and comity. *See, e.g.*, *DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 126 (4th Cir. 2008) (holding that North Carolina's franchise charges on cable and satellite are taxes not fees for purposes of comity analysis); *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371, 373 (3d Cir. 1978) (gross receipts fee levied on company seeking to use underground wires was deemed a tax under the Tax Injunction Act); *Indep. Coin Payphone Ass'n, Inc. v. City of Chicago*, 863 F. Supp. 744, 755 (N.D. Ill. 1994) (collecting cases for proposition that, under the Tax Injunction Act, "courts have held that franchise fees based on a percentage of revenues constitute taxes"); *Diginet, Inc. v. W. Union ATS, Inc.*, 845 F. Supp. 1237, 1240 (N.D. Ill. 1994) (franchise fee assessed on fiber optic cable deemed a "tax" not a fee). That is a matter to be decided under federal common law, and it does not mean that the fee is to be considered a tax for other purposes, such as under the statutory scheme of the federal Internet Tax Freedom Act ("ITFA"). In fact, franchise fees of this nature do not fit the definitions of "tax" and "discriminatory tax" that Congress provided in ITFA.

This case revolves around the reach of Indiana's VSF Act, effective in March 2006, and its applicability to Defendants' respective businesses.

Second, Plaintiffs' lawsuit does not implicate any fundamental right of Defendants attracting heightened judicial review.

Third, Defendants are using this Court to aid them in improving their competitive position. Defendants' competitors have long been paying franchise fees to Plaintiffs and other Indiana Units, but Defendants have not. If Defendants later prevail in this Court on the merits, the Court would be judicially approving a continued competitive imbalance in the marketplace. The Court would, in essence, be deeming Defendants the Indiana marketplace winners by judicial order rather than forcing Defendants to compete on the merits of their respective products. As *Levin* pointed out, 560 U.S. at 431, umpiring the desirability of competitive advantage is best left to local authorities.

Fourth, Indiana state courts are better positioned to rule on any potential constitutional or other violations[5] and provide an adequate remedy by possibly reshaping state statutes and ordinances if necessary because they are more familiar with the Indiana General Assembly's legislative preferences and because there are no apparent constraints on the state courts' remedial options. Plaintiffs have therefore demonstrated every *Levin* factor.

---

[5] Although it is uncertain what defenses Defendants will raise in Indiana because no Answer or dispositive motion has been filed, DIRECTV and DISH argued in the pending Missouri case that applying the franchise fee to them would violate the Missouri Constitution. Moreover, all of the Missouri defendants argued that applying the franchise fee to them would violate ITFA. Although both defenses are meritless, Plaintiffs anticipate that Defendants will make similar arguments in this case. The presence of a federal defense does not defeat application of the comity doctrine. *City of Creve Coeur*, 2019 WL 3604631, at *5 n.7 ("The Court rejects DISH's argument that any potential federal defenses to Plaintiff's claims defeats the comity argument as state courts are fully capable of deciding issues concerning federal preemption." (citing *Levin*, 560 U.S. at 430-31 ("Although Defendant raises federal constitutional defenses as well, these do not involve 'any fundamental right or classification that attracts heightened judicial scrutiny' so as to justify the exercise of federal jurisdiction."))).

The Eastern District of Missouri, applying these *Levin* factors and citing other courts doing the same, held that the Missouri action against these same Defendants (minus Disney DTC) should be remanded to state court under the comity doctrine. *City of Creve Coeur*, 2019 WL 3604631, at *5 (citing *Levin* and *City of Maryland Heights v. TracFone Wireless, Inc.*, No. 4:12cv00755, 2013 WL 791866, at *3 (E.D. Mo. Mar. 4, 2013) (remanding class action seeking declaratory and injunctive relief against telephone service provider related to collection of local tax ordinances)). Other than expressing mere disagreement with the ultimate result in *City of Creve Coeur*, Defendants can articulate no relevant distinguishing factor that should lead this Court to chart a different course. Again, "like cases should be decided alike." *Martin*, 546 U.S. at 139.

And there is no reason to believe that the Eastern District of Missouri erred in any way. Like Missouri's state court, Indiana's state courts offer an adequate venue. "State remedies are sufficient for abstention based on comity principles if they provide the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Perry v. Coles Cty., Illinois*, 906 F.3d 583, 588 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1225 (2019). Indiana's state courts can of course fully hear all matters raised under state and federal law, and the litigants will have access to a full hearing and the full range of appeals. *See id.* (rejecting argument that state courts will fail to provide an adequate forum). Thus, courts in the Seventh Circuit and elsewhere have routinely invoked the comity doctrine to remand to state court disputes involving state revenue. *See, e.g.*, *Perry*, 906 F.3d at 585 (affirming remand of case seeking declaratory and injunctive relief raised by a class of property owners against county for disproportionate tax treatment due to the comity doctrine); *Normand v. Cox Commc'ns, LLC,* 848 F. Supp. 2d 619, 625 (E.D. La. 2012) (applying *Levin*'s comity principles and remanding case where a municipality sued to obtain a declaration that the local sales tax applied to defendant's video programming service); *Diversified Ingredients, Inc. v. Testa*, No. 4:15-CV-1935, 2016 WL 2932160, at *3-4 (E.D. Mo. May 19, 2016) (relying on comity doctrine and Tax Injunction Act

9

when remanding a case to state court for lack of jurisdiction), *aff'd*, 846 F.3d 994 (8th Cir. 2017); *Associated Elec. Co-op., Inc. v. Town of Dell*, No. 3:12CV00110-JMM, 2012 WL 2789708, at *1 (E.D. Ark. July 9, 2012) (remanding case concerning privilege taxes under Arkansas statute per *Levin*).

In *Normand*, the district court expressed particular concern that exercising federal jurisdiction would significantly threaten federal-state relations given that hundreds of thousands of dollars of potential tax revenue hinged on that court's determination of the tax's applicability to defendant. *Normand,* 848 F. Supp. 2d at 624-25. The same concern applies here given that Defendants will likely seek to avoid liability. If successful, Defendants estimate (at ECF No. 1, ¶ 24) that Indiana Units would lose millions of dollars of revenue in franchise fees that should be due under the VSF Act. *Accord Perry*, 906 F.3d at 590-91 (addressing the claim's merits "would plainly interfere" with the county's ability to collect taxes, which "is the exact type of case the comity doctrine was meant to address").

In sum, not only are Indiana state courts better able to construe the VSF Act, they *should be* the courts construing this statute as a matter of first impression. "The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 826 (1997). In this case, where there is no existing state court guidance, and in light of the required sensitivity this Court must show to federal-state relations, Indiana state courts should be given the first opportunity to construe their own statutes. Under the comity doctrine, the Court should decline to embroil itself in the fiscal affairs of Indiana local governments and should remand the case to state court.

## CONCLUSION

"If comity is to mean anything, it would seemingly restrain the prospect of federal court orders disrupting a state's efforts to collect its life blood of revenue pursuant to the state's own law." *Gwozdz v. HealthPort Techs., LLC*, 846 F.3d 738, 743 (4th Cir. 2017). By their removal, Defendants attempt to

do just that—disrupt Indiana cities, towns, and counties' efforts to collect revenue pursuant to state law. That dispute will be best resolved by Indiana's state courts.

This case is a matter of local fiscal affairs, and it should be remanded to the Indiana Commercial Court (Marion County).

Dated: September 15, 2020

Respectfully submitted,

/s/ *Theodore R. Boehm*
Theodore R. Boehm
Andrew W. Hull
Alice M. Morical
Michael R. Limrick
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234
tboehm@hooverhullturner.com
awhull@hooverhullturner.com
amorical@hooverhullturner.com
mlimrick@hooverhullturner.com

George Zelcs (*pro hac vice* forthcoming)
Korein Tillery, LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750
gzelcs@koreintillery.com

Steven M. Berezney (*pro hac vice* forthcoming)
Garrett R. Broshuis (*pro hac vice* forthcoming)
Korein Tillery, LLC
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel. (314) 241-4844
Fax. (314) 241-1854
sberezney@koreintillery.com
gbroshuis@koreintillery.com