UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CITY OF FISHERS, CITY OF INDIANAPOLIS, CITY OF EVANSVILLE, and CITY OF VALPARAISO, *on behalf of themselves and all others similarly situated*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> NETFLIX, INC., DISNEY DTC LLC, HULU LLC, DIRECTV, LLC, DISH NETWORK CORP., and DISH NETWORK LLC, <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) 1:20-cv-02351-JMS-MPB |

## **ORDER**

Pending before the Court in this putative class action is a Motion to Remand, [Filing No. 41], filed by Plaintiffs the City of Fishers, the City of Indianapolis, the City of Evansville, and the City of Valparaiso (collectively, the "Cities"). The Cities ask the Court to return this matter to the Marion Superior Court following its removal to this Court by Defendants Netflix, Inc., Disney DTC LLC, Hulu LLC, DIRECTV, LLC, DISH Network Corp., and DISH Network LLC. This matter is now ripe for the Court's decision.

### I.
#### BACKGROUND

The Cities filed this putative class action in Marion Superior Court on August 4, 2020. [Filing No. 1-2.] The Cities seek a declaration that Defendants, all of whom are alleged to operate streaming video services delivered to customers via the Internet, are obligated to pay certain governmental entities in Indiana franchise fees under Indiana's Video Service Franchises Act, Ind. Code §§ 8-1-34-1, *et seq*. (the "VSF Act"). [Filing No. 1-2 at 11.] The VSF Act requires persons

offering "video service"[1] in Indiana to apply for and receive certificates of franchise authority and pay a quarterly franchise fee to certain governmental "units," including counties, municipalities (such as the Cities), and townships. Ind. Code §§ 8-1-34-12, 8-1-34-16, 8-1-34-17 & 8-1-34-24. The Cities allege that Defendants have not previously sought certificates or paid franchise fees in Indiana. [Filing No. 1-2 at 4.] In addition to the declaration that Defendants provide "video service" and are therefore subject to the VSF Act, the Cities also seek a declaration that Defendants have failed to comply with their obligations under the VSF Act to pay franchise fees, an order for an "accounting of all monies that Defendants owe" class members, and an order "[e]njoin[ing] and restrain[ing] Defendants from providing video service in Indiana, and deriving gross revenues therefrom, without obtaining a franchise and paying the required franchise fees." [Filing No. 1-2 at 11.] The Cities brought this putative class action under Indiana Trial Rule 23 "on behalf of themselves and all other Indiana Units entitled to receive franchise fees from Defendants," and allege that "the proposed class includes at least 600" such governmental units. [Filing No. 1-2 at 6.]

Defendants timely removed the lawsuit to this Court, contending that this case is properly before the Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a) and the Class Action

---

[1] "Video service" is defined as follows:

> (1) the transmission to subscribers of video programming and other programming service:
>    (A) through facilities located at least in part in a public right-of-way; and
>    (B) without regard to the technology used to deliver the video programming or other programming service; and
> (2) any subscriber interaction required for the selection or use of the video programming or other programming service.

Ind. Code § 8-1-34-14.

Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). [Filing No. 1.] The Cities then filed the instant Motion for Remand under 28 U.S.C. § 1447(c), arguing that the Court should remand this case because under comity principles, this matter is more appropriately decided by the Indiana courts. [*See* Filing No. 41; Filing No. 42.]

## II.
### LEGAL STANDARDS

In general, an action filed in state court may be removed to federal court only if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a). Diversity jurisdiction under 28 U.S.C. § 1332(a) requires that no defendant have the same citizenship as plaintiff and that the amount in controversy exceed $75,000, exclusive of interest and costs. CAFA enacts special rules governing removal of class actions. Under CAFA, a defendant may remove a class action to federal district court so long as the case satisfies the statute's special diversity and procedural requirements. First, CAFA only requires minimal diversity of citizenship among parties to the action. 28 U.S.C. § 1332(d)(2). Second, an action removable under CAFA must satisfy the statute's definition of a "class action" or a "mass action." CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "mass action" as "any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]." 28 U.S.C. § 1332(d)(11)(B).

Third, the amount in controversy must exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

The Cities do not argue that Defendants have failed to establish traditional diversity of citizenship, CAFA diversity of citizenship, or the respective amounts in controversy. [*See* Filing No. 42.] Instead, the Cities ask the Court to remand this case under the doctrine of comity.

By way of background, the Tax Injunction Act of 1937 (the "TIA") states that district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA, "by its terms," "bars anticipatory relief, suits to stop ('enjoin, suspend or restrain') the collection of taxes." *Jefferson County v. Acker*, 527 U.S. 423, 433 (1999). *See also Perry v. Coles County*, 906 F.3d 583, 587 (7th Cir. 2018) (The TIA "divests federal courts of subject-matter jurisdiction in cases where 'the relief sought would diminish or encumber state tax revenue.'" (quoting *Scott Air Force Base Props., LLC v. County of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008))). However, the TIA does not bar federal courts from hearing tax-enforcement cases initiated by states or municipalities. *Jefferson County*, 527 U.S. at 433-34 ("[A] suit to collect a tax is surely not brought to restrain state action, and therefore does not fit the Act's description of suits barred from federal district court adjudication.").

Unlike the jurisdictional bar set forth in the TIA, comity, by contrast, is a prudential doctrine of abstention. *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020). The comity doctrine encourages federal courts to avoid "interfer[ing] . . . with the fiscal operations of the state governments . . . in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 422 (2010) (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)). Comity, or

4

"respect for another sovereign,[2]" is "the duty of federal courts to cede litigation seeking to enjoin state tax statutes to the state court." *Perry*, 906 F.3d at 587 (quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 725 (7th Cir. 2011) (en banc)).

In *Levin v. Commerce Energy, Inc.*, the Supreme Court made clear that the comity doctrine is broader, or "[m]ore embracive than the TIA," and serves to "restrain[] federal courts from entertaining claims for relief that risk disrupting state tax administration." 560 U.S. at 417. In that case, natural gas marketers and a consumer sued the state tax commissioner of Ohio for what they deemed discriminatory tax treatment under the Commerce Clause and the Equal Protection Clause in relation to a tax imposed on natural gas marketers but not local distribution companies. *Id.* at 418-19. Plaintiffs sought an order invalidating the tax exemptions afforded the distribution companies. *Id.* at 419. The district court dismissed the lawsuit, citing the comity doctrine, but the Sixth Circuit Court of Appeals reversed, believing that the district court's application of comity was too expansive. *Id.* at 419-20. The Supreme Court reversed, holding that the comity doctrine was not so limited and required the claims to proceed in state court. *Id.* at 432-33.

In so holding, the Court reasoned that "it is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id.* at 421-22 (quoting *Dows v. Chicago*, 11 Wall. 108, 110 (1871) (alternation

---

[2] Although courts analyzing the TIA and the comity doctrine often speak in terms of "state" tax collection, application is not limited taxes paid directly by the state and includes taxes paid to other taxing authorities pursuant to state law, including municipalities. *See, e.g.*, *Perry v. Coles County*, 906 F.3d 583 (7th Cir. 2018) (analyzing a county property tax assessment under the TIA and comity doctrine).

omitted)).  The Court cited a "confluence of factors," *id.* at 431, in reaching its decision that comity warranted abstention under the facts before it.

> First, respondents seek federal-court review of commercial matters over which Ohio enjoys wide regulatory latitude; their suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny.  Second, while respondents portray themselves as third-party challengers to an allegedly unconstitutional tax scheme, they are in fact seeking federal-court aid in an endeavor to improve their competitive position.  Third, the Ohio courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options.  Individually, these considerations may not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process.

*Id.* at 431-32.  In adopting these "confluence of factors," the Court sought to "ensure that 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'"  *Id.* at 431 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

A Missouri federal court, considering a motion to remand from some of the same Defendants in this case, cited *Levin* to conclude that the comity doctrine warranted remand to Missouri state court of class actions brought by cities to collect franchise fees from video-service providers under Missouri's regulatory scheme.  *City of Creve Coeur v. DIRECTV, LLC*, 2019 WL 3604631, at *4-5 (E.D. Mo. Aug. 6, 2019).  In particular, the court noted first that "both Satellite Defendants and Streaming Defendants, by removing these cases, have invited federal-court review of commercial matters of which Missouri and Missouri municipalities enjoy wide regulatory latitude."  *Id.* at *5 (internal citation, quotation marks, and alternations omitted).   Second, the court found that "the state court will be a better forum for certain defenses related to the application of Missouri law and the Missouri Constitution because without question the state court is more familiar with Missouri's tax laws and the intent of the Missouri legislation." *Id.* (internal quotation

marks and alterations omitted). Finally, the court found that Missouri courts were in the best position "to rule on any potential constitutional violation because they are more familiar with the state legislative preferences and because the TIA does not constrain their remedial options." *Id.* (internal quotation marks omitted).

## III.
### DISCUSSION

The Cities ask the Court to remand the case, contending that "disputes concerning local jurisdictions collecting revenue belong in state court under the comity abstention doctrine." [Filing No. 42 at 1.] In support of their request, the Cities principally cite *Levin* and argue that comity is applicable here because this case involves the collection of a revenue by local governments under the VSF Act. [Filing No. 42 at 5.] They argue that remand is appropriate because enforcement and collection of the franchise fee is "a commercial matter over which the Indiana legislature and Indiana Units have traditionally enjoyed wide regulatory latitude," that "does not implicate any fundamental right of Defendants." [Filing No. 42 at 7-8.] They further contend that remand is appropriate because "Defendants are using this Court to aid them in improving their competitive position" and "umpiring the desirability of competitive advantage is best left to local authorities." [Filing No. 42 at 8.] The Cities argue that because this case involves "[a] matter of first impression about the proper interpretation of Indiana state statutes impacting fiscal obligations owed by Defendants to Indiana counties, municipalities, and townships," it "should be decided by Indiana's state courts." [Filing No. 42 at 4.] The Cities also contend that "Indiana state courts are better positioned to rule on any potential constitutional or other violations [implicated by the VSF Act] and provide an adequate remedy." [Filing No. 42 at 8.] The Cities cite *Creve Coeur* in support of their position, noting that the case involved nearly identical claims brought under a Missouri statute

7

similar to the VSF Act against nearly identical defendants as the Defendants in this case. [Filing No. 42 at 1-2.]

In response,[3] Defendants argue that this case belongs in federal court because invocation of CAFA jurisdiction outweighs any comity concerns, and they cite an Oregon district court decision denying remand in support of this proposition. [Filing No. 54 at 8-9 (citing *Brinkmann v. AMB Onsite Servs.-West*, 2017 WL 2901932 (D. Or. June 30, 2017)).] Defendants next argue that *Creve Coeur* was wrongly decided because that court "over-read the importance of *Levin*, which does not hold that federal courts should abstain from all cases involving state taxation," [Filing No. 54 at 10], and that, even if the case was correctly decided, that case is distinguishable because the Missouri court "was particularly motivated by the Missouri state constitutional issues," that are not present in this case, [Filing No. 54 at 13]. Additionally, Defendants argue that remand is inappropriate because after *Creve Coeur* was decided, political subdivisions in other states have availed themselves of federal-court jurisdiction by filing similar lawsuits against Defendants under state franchise-fee statutes like the VSF Act. [Filing No. 54 at 11-12 (identifying cases filed in federal courts in Texas, Ohio, and Nevada).] Defendants also contend that this case "does not implicate strong comity concerns" because it "does not involve tax money that the state government has already collected or is using," [Filing No. 54 at 14], it "was initiated by municipalities" rather than a taxpayer, [Filing No. 54 at 15], and it seeks a narrow ruling on a particular application of the VSF Act, "making it fundamentally less likely to affect an entire regulatory scheme," [Filing No. 54 at 15]. Defendants further contend that because the TIA does

---

[3] Defendant Netflix, Inc. filed a Response in Opposition to Plaintiffs' Motion to Remand, [Filing No. 54], which all other Defendants joined, [Filing No. 55 (Disney DTC LLC and Hulu, LLC); Filing No. 56 (DISH Network Corp. and DISH Network LLC); Filing No. 57 (DIRECT TV, LLC).]

not apply here, comity also does not apply. [Filing No. 54 at 17.] Defendants also argue that remand under comity principles is not appropriate because this Court is competent to apply and interpret state law. [Filing No. 54 at 19.] Finally, Defendants argue that remand is inappropriate because their defenses in this case will include reference to a variety of federal laws and regulations. [Filing No. 54 at 21.]

In reply, the Cities fault Defendants for failing to analyze this case under the "confluence of factors" identified in *Levin*, arguing that "Defendants mostly sidestep *Levin*," and "instead argue that *Levin* does not apply because this case presents an easy question of state law. But ease of decision plays no part in the *Levin* analysis." [Filing No. 58 at 2.] The Cities contend that this case will require rulings on a number of issues that are unsettled under Indiana law and note that Defendants have not identified any case that has analyzed the VSF Act in any context. [Filing No. 58 at 4-6.] The Cities also argue that *Levin* is not as limited as Defendants suggest in their briefing. [Filing No. 58 at 7-8.] And, the Cities contend, the assertion of defenses that rely on federal law and regulations does not overcome the comity doctrine. [Filing No. 58 at 8.] Next, the Cities reply that CAFA does not trump the comity doctrine and argue that *Brinkmann*, the sole case cited by Defendants in support of their contention to the contrary, is inapplicable here. [Filing No. 58 at 8-10.] The Cities also respond that other similar cases that may have been filed against Defendants in federal courts in other states are of no import because the "cities in those states *chose* to file their claims in federal court in the first instance." [Filing No. 58 at 11 (emphasis in original).] Finally, the Cities contend that Defendants' analogizing with the TIA is not helpful because the Cities did not raise the TIA as a basis for remand and because "both the Supreme Court and Seventh Circuit have repeatedly ruled that the comity doctrine is broader than the TIA." [Filing No. 58 at 12.]

9

While the parties may dispute how closely the comity doctrine tracks the TIA, the parties concede, [Filing No. 54 at 16; Filing No. 58 at 12], that application of the TIA is not at issue because the Cities (the revenue-collecting entities) initiated this action, and therefore this action is not a suit to "stop" the collection of taxes. See *Jefferson County*, 527 U.S. at 433. Defendants appear to argue that the TIA provides the framework for comity analysis, arguing that while "the Supreme Court noted in *Levin* that 'the comity doctrine is more embracive than the TIA,' it does not follow that *Levin* set forth a rule by which the comity doctrine entirely engulfs the TIA exception." [Filing No. 54 at 17 (internal citation omitted).] But *Levin* plainly establishes that the comity doctrine encompasses a broader set of circumstances than those encompassed by the TIA, and the "confluence of factors" identified in *Levin* are the standard under which comity is analyzed, not the TIA. *Levin*, 560 U.S. at 424, 431.

Applying the factors identified in *Levin* to this case, the Court first notes that Defendants seek federal-court intervention over matters over which the State of Indiana and its municipalities have traditionally "enjoy[ed] wide regulatory latitude"—specifically, utility regulation and state revenue. See *id.* at 431. And, this matter is a dispute over commercial regulation and does not involve a party's fundamental rights or a suspect classification requiring heightened judicial scrutiny. See *id.* Second, Defendants invoke the Court's jurisdiction "to improve their competitive position," *id.*, namely over traditional cable television and landline telephone providers that pay franchise fees under the VSF Act. [*See* Filing No. 54 at 3 (contending that the VSF Act "impose[s] franchise fees—taxes on local cable and wireline telephone companies that dig trenches and run wires on public rights-of-way" and does not impose franchise fees on "online video providers").] Third, this matter involves interpretation of Indiana state law—specifically, certain provisions of

10

the VSF Act—for which this Court could identify no precedent from any Indiana court.[4] *See id. at 432*. *Cf. Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 362 (7th Cir. 1998) (explaining that under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) abstention principles, "federal courts should abstain from deciding difficult questions of state law bearing on policy problems of substantial public import" or when federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern") (internal citation and quotation marks omitted). Additionally, although Defendants have yet to file a responsive pleading raising defenses to the Cities' lawsuit, Indiana state courts are better positioned than the Court to correct any potential constitutional or other violation Defendants may raise because "they are more familiar with state legislative preference" concerning the VSF Act and because the TIA constrains remedial options available to the Court. *See Levin*, 560 U.S. at 432. Therefore, the Court finds that these considerations, "in combination," demand remand in "deference to the state adjudicative process." *See id.*

Defendants attempt to distinguish this case from *Levin* on the margins. They argue that *Levin* and the comity doctrine do not apply to enforcement actions initiated by taxing authorities. [Filing No. 54 at 13-15.] But if Defendants had sued the Cities first to prevent collection under the VSF Act, the TIA would seemingly apply to bar federal-court jurisdiction, severely limiting what should be the "more embracive" utility of the comity doctrine identified by the Supreme Court in *Levin*. *See* 28 U.S.C. § 1341. Further, *Levin* did not hold that comity principles are inapplicable to enforcement actions. *See, e.g.*, *Levin*, 560 U.S. at 432 (noting that under this

---

[4] Should a federal court entertain this case, the absence of controlling precedent on the key issues may warrant certification to the Indiana Supreme Court under Ind. R. App. P. 64, further counseling in favor of leaving this matter to the state courts.

11

prudential doctrine, the taxing authorities can select their forum). They further argue that this case does not present comity concerns because the Cities have not previously collected the franchise fee from Defendants and therefore "[t]his makes any disruption of state tax administration significantly less likely and less severe." [Filing No. 54 at 14.] However, *Levin* also did not involve a taxing authority's ongoing collection; rather, plaintiffs sought to preclude the state from providing their competitors an exemption, which would, like here, enhance, and not constrain, the state's revenue raising capacity. See *Levin*, 560 U.S. at 419. Defendants also contend comity deference is not warranted because this case only concerns a "particular application of the VSF Act to Defendants and their offerings, making it fundamentally less likely to affect an entire state regulatory scheme." [Filing No. 54 at 15.] This argument ignores the absence of authority from Indiana courts interpreting the relevant provisions of the VSF Act and the potential, and likelihood, that streaming services and new methods to deliver video services will continue to grow. Thus, the Court sees no reason to set aside the comity considerations identified in *Levin*.

A different conclusion is not warranted by virtue of Defendants' invocation of CAFA jurisdiction. The sole case identified by Defendants in support of its proposition that assertion of CAFA jurisdiction outweighs comity concerns—*Brinkmann v. AMB Onsite Servs.-West, Inc.*, 2017 WL 2901932 (D. Or. June 30, 2017)—is inapposite. That case did not involve a taxing authority seeking to collect monies owed; rather, that case was a class action brought by employees against their employer for incorrectly calculating (and withholding) certain taxes. *Id.* at *1. Furthermore, while the *Brinkmann* court denied remand, the court did not cite CAFA as the reason for the denial or hold that CAFA required the court to override any comity concerns. See *id.* at *4. To be sure, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating*

*Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  However, Defendants have not identified support for the contention that the absence of a presumption equates to a rule that CAFA defeats all comity concerns.  Rather, *Levin* warned that "[s]tatutes conferring jurisdiction . . . should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" 560 U.S. at 423 (quoting *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).  CAFA is such a jurisdictional statute.  *See Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017).  In the absence of supporting authority, Defendants' argument that CAFA requires the Court to set aside comity concerns is rejected.

Defendants' extensive arguments to discredit the *Creve Coeur* decision,[5] [Filing No. 54 at 10-13], are also unavailing.  Although the case provides non-precedential guidance, the Court has conducted its own independent analysis of the considerations identified by the Supreme Court in *Levin*, the case upon which the *Creve Coeur* court relied.

Nor does the filing of federal complaints against Defendants in other jurisdictions alter the comity analysis under *Levin*.  Indeed, the Supreme Court specifically noted that comity "is a prudential doctrine.  If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Levin*, 560 U.S. at 432 (internal citation and quotation marks omitted).  That other municipalities in other jurisdictions may have elected to avail themselves of federal court jurisdiction in the first instance is of no consequence to the Motion to Remand pending before this Court.

---

[5] The Court notes that the Eighth Circuit Court of Appeals declined to accept an appeal from the defendants in that case, letting the district decision stand.  *City of Creve Coeur v. DIRECTV LLC*, 2019 WL 7945996 (8th Cir. Sept. 12, 2019).

Finally, that Defendants may raise defenses based in federal law also does not alter the comity analysis. While Defendants argue that the Court should retain this case "in order to apply applicable federal statutes and policies that regulate and forbid the taxation of the Internet," they offer no case law in support of the proposition that the assertion of a defense anchored in federal law overrides comity concerns. [Filing No. 54 at 6.] Indeed, the Supreme Court in *Levin* noted that, at least when it comes to constitutional concerns, state courts are often better positioned than federal courts to provide remedial relief for a constitutional infirmity. 560 U.S. at 428 ("[I]f the Ohio scheme is indeed unconstitutional, surely the Ohio courts are better positioned to determine—unless and until the Ohio Legislature weighs in—how to comply with the mandate of equal treatment [under the Equal Protection Clause].").

In sum, the comity considerations set forth by the U.S. Supreme Court in *Levin* warrant remand to state court, and Defendants have not identified authority that undercuts that conclusion.

### IV.
### CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Remand, [41], is **GRANTED**, and the **CLERK IS DIRECTED TO REMAND** this case to the Marion Superior Court. An Order of Remand will issue separately.

Date: 11/18/2020

*/s/ Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**